Zachary Lawrence, Esq. (NY Bar: 5798202)
Lawrence Law Firm PLLC
598 E Main Street
Little Falls, NY 13365
Telephone: 202-468-9486
Email: zach@zlawpllc.com

Attorney for Plaintiff,
NEVADA BREEZE

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEVADA BREEZE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF WEST SACRAMENTO *et al* | No.: 2:22-cv-06342-MCS-JPR<br><br>**PLAINTIFF NEVADA BREEZE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: January 9, 2023<br>Time: 9:00 a.m.<br>Courtroom: 7C<br><br>Complaint filed: September 6, 2022 |

- 1 -

PLAINTIFF NEVADA BREEZE'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## TABLE OF CONTENTS

**Table of Contents** ............................................................................................. 2

**Table of Authorities** .......................................................................................... 2

**Preliminary Statement** ...................................................................................... 4

**Background & Facts** ......................................................................................... 4

**Legal Standard** ................................................................................................. 5

**Argument** ......................................................................................................... 8

    I.    Plaintiff Has Satisfied the Pleading Requirements of the District Relating to Monell Liability and the Existence of a Custom or Policy as it Relates to a Seizure. ............................................................................................................ 8

    II.   Plaintiff Adequately Pleads Monell Liability as to Her Due Process Claim. ............................................................................................................ 12

**Conclusion** ..................................................................................................... 17

## TABLE OF AUTHORITIES

**Federal Cases:**

*Arnold v. International Business Machine Corp.*, 637 F.2d 1350 (1981) ............ 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 5, 7

*Blantz v. Cal. Dep't of Corrs. & Rehab. Div. of Corr. Health Care Servs.*, 727 F.3d 917 (9th Cir. 2013) ........................................................................................ 12

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ................................................ 6, 7

*Doe v. White*, 859 Fed.Appx. 76 (9th Cir. 2021) .................................................. 12

*Endy v. Cnty of Los Angeles*, 975 F.3d 757 (9th Cir. 2020) .................................. 14

*Erickson v. Pardus*, 551 U.S. 89 (2007) ............................................................... 7

*Firke v. F.B.I.*, 35 F.4th 762 (2022) ................................................................... 14

*Hart v. Parks*, 450 F.3d 1059 (9th Cir. 2006) ............................................. 12, 14

*Herd v. Cnty. of San Bernardino*, 311 F. Supp. 3d 1157 (C.D. Cal. 2018) ............ 8

*Humphries v. Cnty of Los Angeles*, 544 F.3d 1170 (9th Cir. 2009) ......... 13, 14, 15

*Johnson v. City of Shelby*, 574 U.S. 10 (2014) ..................................................... 6

PLAINTIFF NEVADA BREEZE'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) ............................................................................................................. 6

*Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) ..... 7

*Paroline v. U.S.*, 572 U.S. 434 (2014) .................................................................. 10

*Paul v. Davis*, 424 U.S. 693 (1976) ...................................................................... 12

*Phillips v. Hust*, 477 F.3d 1070 (9th Cir. 2007) ................................................... 11

*Swierkiewicz v. Sorema*, N.A., 534 U.S. 506 (2002) ......................................... 6, 7

*Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246 (9th Cir. 2007) ............................... 7

*Williams v. Los Angeles Sheriff*, Case No. CV 17-05640-AB, 2020 WL 8461520 (C.D.Cal. Sept 25, 2020). ............................................................................................... 8

**Statutes & Rules:**

Fed. R. Civ. P. 8 ...................................................................................................... 5

Cal. Wel. & Inst. § 8100 ....................................................................................... 16

Cal. Wel. & Inst. § 8102 ....................................................................................... 17

Cal. Wel. & Inst. § 8103 ....................................................................................... 17

**Secondary Sources:**

James L. Buchwalter, *Application of Stigma-Plus Due Process Claims Other than Education Context*, 95 A.L.R. 6th 341 (2014) ............................................... 13, n. 2

## PRELIMINARY STATEMENT

The gravamen of Plaintiff's Complaint, as it relates to the City of Pasadena ("City"), is that City had in place no policy or custom mandating sharing of information that would prevent erroneous detentions. *See, e.g.*, ECF Doc. No 1 at ¶¶ 16, 19-20, 23, 68-69, 75, 101-102, 104, 107-08 (hereinafter "Compl." or "Plaintiff's Complaint"). The City police were very aware that Ms. Shanklin was far from a "credible" witness, that she suffered from mental health issues, that she had made shockingly large numbers of similar complaints, and that none of them were accurate. *Id.* at 16, 19-20, 23, 68-69. The information readily available and known to police, City actors, was enough to vitiate the "cause" of the detention, but the actors were silent because policy and training did not mandate disclosure. *Id.* at ¶¶ 68-69, 75, 101-102. The fact that officers are not trained to provide information which may be highly relevant to determining whether a reporting party is credible or the soon-to-be-detained party is sane represents reckless indifference. *Id.* at ¶ 106. Finally, it is that lack of training to ensure disclosure or to mandate it which caused Plaintiff's injuries. *See id.* at ¶¶ 99-106, 110-114.

It is difficult to brook the idea that a training program that does not state, "share relevant, *known* information prior to a citizens detention," or that there is not a custom of mandatory disclosure of *known* information, does not represent reckless disregard for erroneous deprivation of rights. The implementation of such a policy would represent virtually no cost and require a single sentence: "if participating in a the potential unreasonable seizure of a person, you *must* share information known to you or readily

available to you that may prevent such seizure." This did not exist and led to the ultimate seizure of Plaintiff.

## BACKGROUND & FACTS

Plaintiff pleaded that City had in place no policy or custom mandating sharing of information that would prevent erroneous detentions and that the training program was inadequate to ensure that City actors would provide disclosures. *See*, *e.g.*, ECF Doc. No 1 at ¶¶ 16, 19-20, 23, 68-69, 75, 101-102, 104, 107-08. The training program of the city and county was a "joint" training program. *id.* at 104. Further the City acted together with County actors in administering mental health programs which likewise require no information sharing. *Id.* at ¶ 7.

The City police were very aware that Ms. Shanklin was far from a "credible" witness, that she suffered from mental health issues, that she had made shockingly large numbers of similar complaints, and that none of them were accurate. *Id.* at 16, 19-20, 23, 68-69. Sharing this information would have vitiated probable cause. *Id.* at ¶¶ 33-35.

The information readily available and known to police, City actors, but was not shared due to training and custom, *i.e.*, a lack of mandatory disclosure. *Id.* at ¶¶ 68-69, 75, 101-102.

Plaintiff pleaded this "stay-silent" style training was recklessly in disregard to her rights, *id.* at ¶ 106, and it caused her injuries. *See id*. at ¶¶ 99-106, 110-114.

## LEGAL STANDARDS

To survive a motion to dismiss for failure to state a claim, the complaint must give the defendant general notice under Federal Rule of Civil Procedure, rule 8, which requires *only* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

# (continued)

R. Civ. P. 8(a)(2).

This is a lenient standard which was adopted to simplify the pleading system; the rule "was adopted to focus litigation on the merits of a claim" rather than on technicalities that could keep litigants out of court. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 513-14 (2002); *see also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993) (no heightened pleading standard for Monell claims).

There is no heightened pleading standard for *Monell* claims, nor has there ever been so. *See generally Leatherman*, 507 U.S. 168-69. This has not changed in light of *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) or *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), while a *Monell* claim must comply with Rule 8, it need not do more. *See AE ex rel. Hernandez*, 666 F.3d 631, 637 (9th Cir. 2012) (noting "Our circuit precedent, [noting Ninth Circuit's caselaw], requires plaintiffs in civil rights actions against local governments to *set forth no more than a **bare allegation** that government officials' conduct conformed to some unidentified government policy or custom . . .*" but requiring notice of actual policy to allow for defense).

Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (holding mere form is not to cause "battles").

The factual allegations present in the complaint need only "be enough to raise a right to relief above the speculative level." *Id*. (citations omitted). The *Twombly* Court stressed that it was not imposing a probability requirement on plaintiffs at the pleading stage. *Id.* at 556. Rather, the claims must be "plausible," which "simply calls for enough facts to raise a

- 6 -

reasonable expectation that discovery will reveal evidence" supporting the allegations. *Id*. The Court explained: "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks and citations omitted).

Importantly the holding in *Twombly* was significantly narrowed and delimited in *Erickson v. Pardus*, 551 U.S. 89 (2007) (*per curiam*): Rule 8: "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' *Id*. at 93 (quoting *Twombly*, 550 U.S. at 555); *see also Cormier v. All Am. Asphalt*, 458 F. App'x 620, 620 (9th Cir. 2011) (quoting *Twombly*, 550 U.S. at 569-70) ("*Swierkiewicz* is still good law after *Twombly* and *Iqbal*. This is supported by the language of *Twombly*, which rejected the argument that its analysis 'runs counter to Swierkiewicz.'").

Whether a complaint should survive a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A district court reviewing a complaint under Rule 12(b)(6) must "construe the complaint in a light most favorable to the non-moving party," *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007), *cert. denied*, 552 U.S. 1062 (2007).

Finally, pleading facts "'on information and belief'" is sufficient to survive a motion to

- 7 -

PLAINTIFF NEVADA BREEZE'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

dismiss as long as the other *Iqbal-Twombly* factors are satisfied. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988).

## ARGUMENT

**I.     Plaintiff Has Satisfied the Pleading Requirements of the District Relating to *Monell* Liability and the Existence of a Custom or Policy as it Relates to a Seizure.**

Law in this Circuit makes clear that while *Twombly* and *Iqbal* have required specific facts beyond legal conclusions those facts need not be do any more than provide notice of the policy. *AE ex Rel* Hernandez, 666 F. 3d at 637. In *Williams* v. *Los Angeles Sheriff's Dept.* the Court held thus:

> To prevail on her Monell claim, Plaintiff must sufficiently allege that: (1) she was "deprived of [her] constitutional rights by defendants and their employees acting under color of state law"; (2) "the defendants have customs or policies which amount to deliberate indifference to [her] constitutional rights"; and (3) "these policies are the moving force behind the constitutional violations." *Lee v. City of Los Angeles*, 250 F.3d 668, 681–82. "A policy or custom is considered a 'moving force' behind a constitutional violation if both causation-in-fact and proximate causation can be established." *Iman v. Anderson*, 294 F. Supp. 3d 907, 920 (N.D. Cal. 2018) (citing *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008)).

Case No. CV 17-05640-AB, 2020 WL 8461520, at *6 (C.D.Cal. Sept 25, 2020).

This requires that plaintiff: "(1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, *i.e.*[,] show how the deficiency involved was obvious and the constitutional injury was likely to occur." *Herd v. Cnty. of San Bernardino*, 311 F. Supp. 3d 1157, 1167 (C.D. Cal. 2018)).

Plaintiff has stated that the problem with the training program and the policy was obvious and amounted to deliberate indifference: the training and policies required *no*

*sharing of information regardless of how readily available it was or how relevant it might be* to probable cause supporting the detention. *See* Compl. at ¶¶ 101-106.

Plaintiff specifically pleaded:

> On information and belief, there exists no policy requiring County or City agents, to check readily available records of reporting party's credibility or mental capacity prior to detaining a third-party; on information and belief, there is no policy requiring even *de minimus* information sharing of such records between County and City agencies and actors regardless of how readily available such information is; on information and belief there is not even a requirement to check internal DOH or City Police records for such information; on information and belief, this joint training policy of City and County, or lack thereof, was a proximate cause of Plaintiff's injuries.

Compl. ¶ 104.

The Defendant's know the exact flaw with the program and training: a lack of mandatory information sharing and *de minimus* search of readily available information—hard stop.

To the extent that a failure to train employees to share relevant readily available or known information is not an obvious flaw, Plaintiff can readily plead that such is an obvious flaw. Plaintiff, doubts such is necessary, given the need to simply provide notice of the program and its flaws, but she would happily amend if this was not an inference that was apparent. The Plaintiff's point is that a requirement for *de minimus* information sharing where such may be extremely relevant—such as that the reporting party was likely filing a wholly frivolous report and should not be believed because she has filed many such reports in the past that were frivolous, Compl at ¶¶ 16, 19, 20, 24, 33-35—was an obvious flaw and that such led to the detention.

PLAINTIFF NEVADA BREEZE'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

As to how the policy caused Plaintiff harm, this should likewise be fairly obvious, the Plaintiff was detained because certain actors credited accusations from a reporting party; that reporting party was far from credible, likely mentally ill, and had made numerous false accusations which were virtually identical. *Ibid.* Had City actors shared this information with County actors—or had there been in place training or custom which made the sharing of such information mandatory—then Plaintiff would have never been detained, there would be no 5150 hold, there would be no records of such a hold, *etc., etc. See id.*; *see also id.* at ¶¶ 99-106.

Further, Plaintiff needed only to demonstrate proximate cause: proximate cause need not be a *but for* cause or the singular cause of an event, but rather have a significant and sufficient connection to the ultimate injury. *See generally Paroline v. U.S.*, 572 U.S. 434, 444-45 (2014) (discussing proximate cause at lenth).

> As a general matter, to say one event proximately caused another is a way of making two separate but related assertions. First, it means the former event caused the latter. This is known as actual cause or cause in fact. The concept of actual cause "is not a metaphysical one but an ordinary, matter-of-fact inquiry into the existence ... of a causal relation as laypeople would view it." 4 F. Harper, F. James, & O. Gray, Torts § 20.2, p. 100 (3d ed. 2007).
>
> Every event has many causes, however, see ibid., and only some of them are proximate, as the law uses that term. So to say that one event was a proximate cause of another means that it was not just any cause, but one with a sufficient connection to the result. The idea of proximate cause, as distinct from actual cause or cause in fact, defies easy summary. It is "a flexible concept," *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 654[] (2008), that generally "refers to the basic requirement that ... there must be 'some direct relation between the injury asserted and the injurious conduct alleged,' " CSX Transp., Inc. v. McBride, 564 U.S. ——, ——, 131 S.Ct. 2630, 2645, 180 L.Ed.2d 637 (2011) (ROBERTS, C.J., dissenting) (quoting *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 268 [] (1992)). The concept of proximate causation is applicable in both criminal and tort law, and the analysis is parallel in many instances. 1 W. LaFave, Substantive Criminal Law § 6.4(c), p. 471 (2d ed. 2003) []. Proximate cause is often explicated in terms of foreseeability or the

scope of the risk created by the predicate conduct. See, e.g., ibid.; 1 Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 29, p. 493 (2005) []. A requirement of proximate cause thus serves, inter alia, to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity. *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 838–839[] (1996).

*Id.*

In the Ninth Circuit the "touchstone" of proximate cause is foreseeability—this is specifically true of section 1983 actions. *Mendez v. Cnty of Los Angeles*, 897 F.3d 1067, 1076 (2018) ("'the touchstone of proximate cause in a § 1983 action is foreseeability.'") (quoting *Phillips v. Hust*, 477 F.3d 1070, 1077 (9th Cir. 2007), *vacated on other grounds*, 555 U.S. 1150 (2009)).

Plaintiff believes that the foreseeability of the injury here is quite high and "not so attenuated that the consequence is more described as a fortuity." *Id.*

It is difficult to say that the training program, which requires no sharing of information despite how readily accessible, or how relevant, failed to foreseeably result in Plaintiff's detention: if you have a list of food allergies and do not check it as another prepares food it is not wild to assume that someone will get anaphylactic shock at some point. More or less this was structured as a joint County-City task, *see* Compl at ¶¶ 7, 104, where there was no back and forth information sharing between the County and City despite the fact that it was likely that there may exist relevant information.

Defendant relies entirely on *Arnold v. International Business Machine Corp.*, ECF Doc. No. at 11-12,[1] where IBM contacted certain government defendants in relation to potential stealing of trade secrets, there were interviews of various employees by government defendants, there was later a search based on insufficient probable cause, and a 1983 suit. 637 F.2d 1350, 1351-53 (1981). Leaving apart the fact that this was a private actor, who simply provided information to a state actor, and that this was a motion for summary judgment, the difference is striking. First, this is a claim based on a failure to train; the pertinent question here is if there was in place a training program that required mandatory disclosure of relevant information would the deprivation have taken place? The answer is obviously, no. Stated another way, were one to design a training program that required no sharing of information regardless of how relevant or how readily available, would such likely lead to erroneous deprivations: the answer yes.

Second, the case is distinguishable in that the City did exercise significant control in a program in which its actors regularly took part and in the training of its actors. Compl. at ¶¶ 7, 104. There is no question that the City could have put in place alternate programs that would have ultimately prevented the injury or alternatively had made it significantly less likely.

## II. Plaintiff Adequately Pleads *Monell* Liability as to Her Due Process Claim.

To clear up what appears to be a misunderstanding, Plaintiff pleaded that pursuant to policy and an inadequately training, City caused Plaintiff's detention, *i.e.*, she was detained

---

[1] Plaintiff utilizes "stamped" PACER page numbers rather than internal page numbers to limit inconsistency in numbering.

- 12 -

PLAINTIFF NEVADA BREEZE'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

under 5150 and records of that detention have exposed her to scorn. Compl. at 110 (incorporating previous count). What "caused" the entire mess was the lack of training, *i.e.*, a City policy. *Id.* at ¶¶ 111, 114.

Moving forward, to state a stigma-plus claim, a plaintiff needs to demonstrate stigma which is closely associated with a deprivation of a more concrete right: particularly a liberty or property right. *See generally Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006) (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)). It need not be a Constitutional right, nor a right enshrined in the Bill of Rights. *See, e.g.*, *Doe v. White*, 859 Fed.Appx. 76, 77 (9th Cir. 2021) (discussing loss of state protected property interests); *Humphries v. Cnty of Los Angeles*, 544 F.3d 1170, 1200 (9th Cir. 2009), *reversed on other grounds* 562 U.S. 29 (2010) (licensure); *Blantz v. Cal. Dep't of Corrs. & Rehab. Div. of Corr. Health Care Servs.*, 727 F.3d 917, 922 (9th Cir. 2013) (chosen profession).

Here Plaintiff has pleaded that multiple interests—liberty and property—were affected by the stigma or in connection with the stigma: she lost professional licensure, could not practice in her chosen profession, no longer qualified for government programs, received unequal medical treatment/disparate treatment, was unreasonably seized, and finally lost her ability to carry a pistol/own a pistol.[2] *See* Compl. at ¶¶ 39-44, 112, 114.

---

[2] There is no question that a fourth amendment violation, *i.e.*, an unreasonable seizure of one's person coupled with stigma is a "stigma plus" claim—the fourth amendment is a liberty right—; one's licensure also represents a property right; one's chosen profession a liberty right; equal protection a liberty right; the right to carry arms a liberty right. *see generally* James L. Buchwalter, *Application of Stigma-Plus Due Process Claims Other than Education Context*, 95 A.L.R. 6th 341 (2014) In short each of these rights were taken from Plaintiff in connection with the publication of stigmatizing information.

PLAINTIFF NEVADA BREEZE'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The Defendant seems to only focus on the final deprivation and appears to make a claim that the stigma must be a but-for cause of the deprivation. ECF Doc. No. 33 at 14-16. Needless to say this is somewhat incomplete given the number of interests or "plusses" pleaded. Regardless, the question is not whether or not the stigmatization was the "cause" of the loss but rather whether it was connected.

In the Ninth Circuit a person may satisfy stigma-plus by demonstrating connection between a "plus" and a "stigma : "This is known as the "stigma-plus test, and can be satisfied in two ways. [¶] First the plaintiff must show that the injury to his reputation was a was inflicted *in connection with* the deprivation of a federally protected right . . ." *Hart v. Parks*, 450 F.3d at 1070 (emphasis original). While plaintiff admits that the language in the *Hart* decision reads oddly—it seems as if it may be explaining a two-part test rather than explaining two ways in which liability may be established—this appears to be cleared up in *Firke v. F.B.I.*, 35 F.4th 762, 769, n.5 (2022) (quoting approvingly connection language).

Indeed, *Firke*, brings into question the idea that normally undisclosed government lists cannot create a stigma. *See generally id.* at 776 (stigma from being placed on no-fly list); *but see* ECF Doc. No. 33 at 14 (seemingly insinuating that the government maintenance of records may insulate from liability) (citing *Endy v. Cnty of Los Angeles*, 975 F.3d 757 (9th Cir. 2020)).

Defendant does not necessarily develop the argument at length, but it appears that the Defendant interprets the lack of public accessibility to foreclose a finding of stigma. *Id.* at 15 ("Plaintiff's alleged information relating to her detention is not publicly accessible, which eliminates the concern that it may be disseminated in such a manner that would result

damaging her good name, reputation, honor or integrity."). The holding of *Endy* certainly does not support such a broad conclusion: *Endy* goes to great lengths to distinguish itself from *Humphries*. 975 F.3d at 765-766.  More or less, the holding in *Endy* is that an "unfounded" listing which would be viewed only by those who understand that "unfounded" is different than "inconclusive" or "substantiated" would not lead to them stigmatizing the plaintiff. *Endy*, 975 F.3d at 765.

In *Humphries*, there was a list that was available to third parties—just as in *Firke*— which listed the plaintiff as being a child abuser by those with access to the CACI registry. *Humphries*, 554 F.3d 1186. Here there is a list available to third parties—plaintiff notes that the 5150 hold is now in her medical records that lists her as being detained involuntarily under section 5150. *See generally* Compl. at ¶¶ 44, 49.

Further this case, does not involve the equivalent of an "unfounded": Plaintiff is listed as being placed under a 5150 hold, no more no less, and such has resulted in significant impacts. Further, the publication of this is not in a confidential list where the "5150" language bears a similar connotation of "not guilty" rather it is in records accessible by government actors at large, and medical providers at large. *See, e.g.*, *id.* at ¶¶ 44, 49. The plaintiff did not plead that this was a highly confidential record accessible only to certain knowledgeable professionals, or through issuance of court order, who would assume that a 5150 hold meant that there was a significant possibility that plaintiff was released after a finding that nothing was wrong with her. Defendant assumes that to be the case contrary to the facts pleaded.

Defendant further appears to make certain assumptions as to the operations of law which are either incorrect or simply not relevant. *See* ECF Doc. No. 33 at 14 (apparently

- 15 -

ignoring all sections that reference 5150 as it relates to possession or ownership of a firearm and focusing on single section of Welfare and Institutions Code). As City correctly notes a 5150 hold lights off a chain of operations of law, whether or not those operations of law were correctly implemented in this case in not exactly important, nor is it terribly relevant that under other sections of the law Plaintiff would have suffered worse losses. *See generally* ECF Doc. No. 33 at 14-16 (describing what may have occurred under different certification of mental illness).

The Welfare and Institutions Code is not so simple as to contain a single statute, however. Indeed, section 8100 of the code prevents any person with a 5150 hold from having in their custody possession or control a "deadly weapon" including any firearm, whatsoever:

> (a) A person shall not have in his or her possession or under his or her custody or control, or purchase or receive, or attempt to purchase or receive, any firearms whatsoever or any other deadly weapon, if on or after January 1, 1992, he or she has been admitted to a facility and is receiving inpatient treatment and, in the opinion of the attending health professional who is primarily responsible for the patient's treatment of a mental disorder, is a danger to self or others, as specified by Section **5150**, 5250, or 5300, even though the patient has consented to that treatment. A person is not subject to the prohibition in this subdivision after he or she is discharged from the facility.

(emphasis and bold face added).

Further, section 8102, includes any person described in section 8100 (including those held on a 5150) and requires that that person have their firearm confiscated and potentially destroyed. Cal. Wel. & Inst. § 8102. Further still, Section 8103(f)(1)(A) deprives the person "taken into custody as provided in section 5150" from possessing, controlling, receiving,

owning, *etc*, "any firearm for a period of five years after the person is released from the facility."

Defendant's argument appears to be that Plaintiff has not forever and throughout the entirety of the United States had her right to bear arms abrogated, and that really is just not the proper question.

The question is: Was there some serious infringement or deprivation of right coupled with a stigma? Here, ironically, the confiscation of the gun itself, of course would implicate a property right, but further, and certainly, the five-year loss in the state of the right to possess a firearm likely would hit the loss of a liberty interest bar. As to whether that triggered losses throughout the United States that will last for life is not particularly important. Finally, the entire point is more or less academic because no other liberty or property interest pleaded was actually examined: in short the stigma-plus count remains either way.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety; alternatively, Plaintiff should be allowed leave to amend or any other relief the Court finds just and proper.

DATED: December 12, 2022

By /s/Zachary Lawrence, Esq.
Zachary Lawrence, Esq
Lawrence Law Firm PLLC
598 E Main Street
Little Falls, NY 13365
*Attorney for Plaintiff Nevada Breeze.*

PLAINTIFF NEVADA BREEZE'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS