UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 2:22-cv-06342-MCS-JPR | Date January 12, 2023 |
| Title *Breeze v. County of Los Angeles* | |

Present: The Honorable **Mark C. Scarsi, United States District Judge**

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER RE: MOTION TO DISMISS (ECF NO. 33)

Defendant City of Pasadena moves to dismiss the claims asserted against it in the Complaint of Plaintiff Nevada Breeze. (Mot., ECF No. 33.) Breeze opposes the motion, (Opp'n, ECF No. 42), and the City filed a response, (Reply, ECF No. 43). The Court heard oral argument on January 9, 2023.

## I. BACKGROUND

According to the Complaint, Breeze resides with and cares for her mother,[1] who was diagnosed with major depression with psychosis. (Compl. ¶¶ 14–15, ECF No. 1.) The local emergency services community, including City and County emergency services workers, was well aware of Breeze's mother's condition. (*Id.* ¶¶ 14, 16.) For example, Breeze's mother placed over 100 calls to the City's police department over five years, including three calls in summer 2020 in which she alleged Breeze had assaulted her; made over 75 calls to Los Angeles County Adult Protective Services ("APS") to state "the same allegations" that Breeze had assaulted

---

[1] Because the allegations call into question this nonparty's capacity, this Order does not identify her by name.

her; requested and was denied six restraining orders in 2020; and called emergency services multiple times in the months and days preceding the incident giving rise to this suit. (*Id.* ¶¶ 16, 18–20, 24, 33.) The City police department had determined that Breeze's mother's reports were not credible. (*Id.* ¶ 20.) On September 13, 2020, Los Angeles County employees detained Breeze and involuntarily placed her on a 5150 hold[2] based on a report by Breeze's mother to APS. (*Id.* ¶¶ 24–25, 27–32.) Breeze asserts that she did not meet the legal criteria for a 5150 hold, as confirmed by a medical provider. (*Id.* ¶¶ 21–22, 34–37.)

Among other consequences of the 5150 hold, Breeze was barred from possessing a firearm, resulting in the loss of her employment as an armed security professional. (*Id.* ¶¶ 38–41.) Breeze was exposed to humiliation, scorn, and reputational damage; she explains that medical personnel declined to screen or treat her for a medical condition "because of the presence of the 5150 hold on her records." (*Id.* ¶¶ 42–44.)

Breeze contends the City should have trained its agents and employees to coordinate and cooperate with the County in initiating 5150 holds, as "there is no policy requiring even *de minimus* [sic] information sharing" of records between the City and County. (*Id.* ¶¶ 99–102, 104–07.) She asserts two claims against the City for violation of 42 U.S.C. § 1983: inadequate training and supervision, and deprivation of Breeze's liberty interest in her good name, reputation, honor, and integrity. (*Id.* ¶¶ 97–115.)

---

[2] California Welfare and Institutions Code section 5150(a) provides: "When a person, as a result of a mental health disorder, is a danger to others, or to themselves, or gravely disabled, a peace officer, professional person in charge of a facility designated by the county for evaluation and treatment, member of the attending staff, as defined by regulation, of a facility designated by the county for evaluation and treatment, designated members of a mobile crisis team, or professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services."

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III. DISCUSSION

"To make out a cause of action under section 1983, plaintiffs must plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). "A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Breeze asserts two theories of the City's liability. Both are inadequately pleaded.

### A. Inadequate Training and Supervision

Breeze charges the City with deliberate indifference to her constitutional rights for its failure to train its agents and employees to share information with the County that "may be relevant to whether a 5150 reporter is credible or whether a 5150 detainment should occur." (Compl. ¶ 101; *see id.* ¶¶ 99–102, 104–07.) According to the Complaint, although "the County and the City coordinate and

cooperate in the initiation of 5150 holds," (Compl. ¶ 100), they do not share information relevant to deciding whether a 5150 detainment should occur, (*id.* ¶¶ 103–04, 107). The Court questions the plausibility of the latter allegation given the former but assumes both are true. Without opining on the utility or virtue of the intergovernmental communication program Breeze proposes, the Court concludes that *Monell* liability does not lie for the City's failure to implement a novel information-sharing plan of Breeze's own invention.

A municipality's inadequate training of its agents or employees "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "*Monell* liability is at its most tenuous where a claim turns on failure to train." *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1167 (9th Cir. 2022) (internal quotation marks omitted). "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153–54 (9th Cir. 2021).

The second and third elements are not met here. As to the second element, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation marks omitted); *see Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train, though there exists a narrow range of circumstances in which a pattern of similar violations might not be necessary to show deliberate indifference." (cleaned up)). Breeze alleges no such pattern, as her claim relies entirely on her individual submission to an involuntary 5150 hold. Breeze does not engage with the City's argument about the sufficiency of her pleading of a pattern of violations; instead, she argues without much explanation that the deliberate indifference is obvious from the City's lack of training concerning sharing information with unrelated municipal entities. (Opp'n 8–9.)

At the hearing, Breeze's counsel proffered that common sense dictates that no pattern needs to be pleaded or proven here. But deliberate indifference is not "so patently obvious" here. *Flores*, 758 F.3d at 1159 (internal quotation marks omitted).

A valid failure-to-train claim that is not based on a preexisting pattern of violations is "rare." *Connick*, 563 U.S. at 64. In such circumstances, municipal liability requires that "the unconstitutional consequences of failing to train" must be a "highly predictable consequence" of a decision not to train. *Id.* (internal quotation marks omitted). Breeze does not point to or allege any facts, or present any legal authority, upon which the Court may conclude her claim falls within the "narrow range of circumstances" where no pattern of violations needs to be pleaded or shown. *Cf. Flores*, 758 F.3d at 1160 (affirming dismissal for failure to state a claim, reasoning that "[t]here is no basis from which to conclude that the unconstitutional consequences of failing to train police officers not to commit sexual assault are so patently obvious that the County or Baca were deliberately indifferent").[3]

As to the third element, a plaintiff must plead the defendant's conduct was the actual and proximate cause of the constitutional injury. *White v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990). Breeze focuses her brief on proximate cause, (Opp'n 10–12), but the causation problem here is more fundamental: no plausible, salient facts support Breeze's pleading burden as to cause in fact. Instead, Breeze relies on a summary, conclusory allegation that she "would never have been injured" "[i]f the County and City had in place an information sharing system" because APS agents "would have been forced to realize" the incredulity of Breeze's mother's reporting. (Compl. ¶ 107.) Other allegations in the Complaint render this conclusion implausible. Specifically, Breeze pleads that the decision to detain her was made by County, not City, agents. (*E.g.*, *id.* ¶ 57.) Breeze pleads that County agents and entities, like City agents and entities, were apprised of Breeze's mother's incredible reports. (*Id.* ¶ 16 (alleging APS and the Department of Mental Health "on multiple

---

[3] In reaching this conclusion, the Court resists the City's contention at oral argument that a pattern *must* be pleaded to state a failure-to-train claim. The City apparently rests its argument on *Vanegas*, 46 F.4th at 1167, which considered the propriety of summary judgment on a failure-to-train theory unsupported by evidence of a pattern. *Vanegas* did not abrogate *Flores*'s recognition that a failure-to-train claim may be pleaded without facts supporting a pattern in a "narrow range of circumstances." *Flores*, 758 F.3d at 1159 (internal quotation marks omitted); *see Vanegas*, 46 F.4th at 1167 (quoting *Flores* for the proposition that "a failure-to-train theory of *Monell* liability *usually* requires a 'pattern'" (emphasis added)); *Connick*, 563 U.S. at 64 (noting the Supreme Court has "sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations").

occasions responded to calls" to Breeze and her mother's home and that the mother and her mental state "were well known and documented in the emergency services community at both a County and City level"); *id.* ¶ 24 (alleging Breeze's mother "made over 75 calls" to APS that "involved the same allegations and request—namely that Mother had been assaulted and that Plaintiff should be physically removed from the Home"); *id.* ¶ 33 (indicating the mother's calls "all were found to be frivolous").) According to Breeze's allegations pertaining to the County and APS agent defendants, the agents had available information from APS casting doubt on the mother's believability they elected not to credit. (*Id.* ¶¶ 28–33.) Given the agents' purported failure to give credence to information *already at their disposal* probative of the mother's credibility, Breeze states no plausible facts to support her conclusion that additional information from the City, such as information relating to incidents that engaged the City's police department, (*id.* ¶¶ 19–20), would have affected, let alone changed, APS agents' decision to detain her. The pleading fails to demonstrate the City's lack of training on intergovernmental information sharing is a but-for cause of Breeze's purportedly wrongful 5150 detention by County agents.

For these reasons, the claim must be dismissed.

B.   **Stigma-Plus**

Breeze asserts that the City's actions "deprived Plaintiff's liberty interest in her good name, reputation, honor and integrity," and that as a result of the 5150 hold, she was subject to scorn and humiliation, lost her right to bear arms, and cannot continue her employment as a security guard. (Compl. ¶¶ 111–15.) The Court assumes, as the parties assume in their briefs, that the alleged deprivation was a result of the alleged failure to train. (Opp'n 12–13; Reply 7.)[4] The claim fails both insofar as it rests upon the inadequately pleaded failure-to-train theory and insofar as the claim itself is inadequately pleaded.

"The Fourteenth Amendment protects individuals against the deprivation of liberty or property by the government without due process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). Section 1983 affords a remedy for such a violation of procedural due process and requires the pleading of three

---

[4] The Complaint itself does not clearly state the basis upon which Breeze asserts the City is liable under a stigma-plus theory. (*See* Compl. ¶ 111 (identifying the City's "above described actions" as the basis for liability).) The claim would be subject to dismissal under Rule 8(a)(2) if the Court were to relax this assumption.

elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022) (quoting *Portman*, 995 F.2d at 904). "Although damage to reputation alone is not actionable, such reputational harm caused by the government can constitute the deprivation of a cognizable liberty interest if a plaintiff was stigmatized in connection with the denial of a more tangible interest." *Fikre v. FBI*, 35 F.4th 762, 776 (9th Cir. 2022) (cleaned up). A claimant may meet this "stigma-plus" test in one of two ways: the plaintiff can show either "that the injury to his reputation was inflicted *in connection with* the deprivation of a federally protected right" or "that the injury to reputation *caused* the denial of a federally protected right." *Hart v. Parks*, 450 F.3d 1059, 1070 (9th Cir. 2006).

Breeze fails to plead that the City deprived her of a liberty interest given the causation problems identified above. The stigma Breeze asserts resulted from the 5150 hold initiated by the County and County agents. (Compl. ¶¶ 112–14.) There are no plausible facts giving rise to an inference that the City's failure to train its agents and employees to share information with the County was a cause in fact of the 5150 hold, let alone of the stigma resulting from circulation of information about the detainment. The claim is dismissed accordingly.

### C. Leave to Amend

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

At the hearing on the motion, the Court questioned Breeze's counsel as to whether Breeze could plead additional facts that might support the causation elements of her claims against the City. Counsel submitted that Breeze could plead additional facts about the City police department's experience with Breeze's mother, but he acknowledged that such allegations, if pleaded, would not alter the corpus of facts in a meaningful way. Based on the colloquy at the hearing, the Court is confident that amendment of the claims would be futile. Breeze cannot plead additional facts supporting an inference of causation consistent with the facts already alleged about the APS agents' decision to detain Breeze notwithstanding County information at their disposal about her mother's lack of credibility. S*ee United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) ("Leave to amend is warranted if the deficiencies can be cured with additional allegations that are

consistent with the challenged pleading and that do not contradict the allegations in the original complaint." (internal quotation marks omitted)). Accordingly, the Court denies leave to amend.

## IV.   CONCLUSION

The Court grants the City's motion and denies leave to amend. The Court directs the Clerk to terminate the City as a party to this case.

**IT IS SO ORDERED.**